## Laviolette *vs* Redding, &c.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Mechanics' lien in Louisville.*

JUDGE MARSHALL delivered the opinion of the Court.

WE cannot concur with the Chancellor in the conclusion "that the claim of lien asserted by Laviolette, for papering done on the house erected on the ground leased by Redding of Rudd, be dismissed, because the note exhibited was for and in consideration, in part, for work and materials on one house leased of Rudd, and part on another leased of another landlord, Holt."

The entire consideration of the note is for wall paper furnished by Laviolette to Redding, and used by him on two adjoining houses, the one erected by himself, on ground leased by him from Rudd, and the other repaired or erected by him on adjoining ground leased by Redding from Holt, but both intended and used by Redding as one house, kept by him as a tavern, and known as "the Pearl Street House." Laviolette had, in fact, a lien or liens upon Redding's interest in "the Pearl Street House," for the whole of his demand, though one portion of the house may have stood on ground leased of one landlord, and the other on ground leased from a different landlord. As between him and Redding, the debt, and indeed the lien also, was entire, though in respect of the interest of others, the lien might be regarded as attaching separately to the different portions of the house on which the paper was used, and as being properly enforcible in that manner only. But the note makes no reference to the lien nor to the consideration, which, in establishing the lien, must, unless admitted, be proved *dehors* the note ; and

CHANCERY. 121 $\frac{\text{4bm 81}}{240}$

*Case 17.*

*Sept. 25.*

A mechanic's lien in the City of Louisville is not waived or lost by taking a note for the price.

A mechanic has a lien on the interest of a lessee of a house for materials furnished for that house, tho' part of the materials be used on parts of the building leased from different landlords.

although a note might, under some circumstances, aid, incidentally, in making out the proof of amount, yet as it makes no reference to the particular consideration, but its first effect is to suspend the enforcement of the lien, the fair presumption is, that it is taken in this and other cases, as evidence of a debt merely, to be used as the convenience of the payee may require, and in the expectation that it will be paid, and not with the view of improperly using it to the injury of others, in support of a claim of lien.   This presumption is especially to be indulged in the present case, in which it neither appears that Laviolette knew of any diversity of interests which might affect the entirety of his lien, nor that if he had known it, there was any advantage, real or supposed, to be attained in regard to those interests, or in the effectuation of his lien, by taking one note for the whole demand, even if this could have affected the nature or extent of the lien. It may be assumed then, that the note was taken in good faith, as the evidence of a just debt, without any particular view to its use, in enforcing the lien, without any view to the injury of others from putting the whole debt in one note, and probably in ignorance of the facts on which any discrimination with regard to the lien can be founded. We think the lien or liens, existing when the note was taken, were not otherwise affected thereby, than every lien under the statute is affected by taking a note for the price of the work or materials—the only effect of which is, to suspend the enforcement of the lien till the note falls due.   The bill was filed within one year after the paper was furnished; it alledges that the paper was furnished to Redding to be used, and was used in papering the brick house on the west side of Third Street, in Louisville, now kept as a tavern by said Redding, and known as "the Pearl Street House."   And after other allegations respecting the value of the paper and the dates at which it was furnished, the complainant states, "that the said house was erected by the said Redding, on leased ground, the property of James Rudd, for a term of years; he does not know the amount of the ground rent, or at what time it is payable," and making Redding and Rudd defendants, he calls upon Redding to file his lease for said

ground. And having also made other persons defen-
dants, whom he understood to claim liens "on said
house," he prays "that the lien given him by the statute
on the said house, for his debt for paper used in building
and finishing it, may be enforced against the same, and
that it be sold to satisfy the same."

The bill, as we think, asserts a lien upon the entire
Pearl Street House, and the subsequent statement, as to
the ground on which it was erected, &c. is not intended
to discriminate between different parts of that house, and
to restrict the assertion of lien to one part only, but is
clearly an attempt to describe the entire house and Red-
ding's interest in it, with a view of ascertaining the ex-
tent of that interest, which alone could be subjected to
the lien. It turns out by the answers of Rudd and Red-
ding, subsequently filed, and by the proof taken, that the
description attempted in the bill, is in part erroneous;
that the paper was not all used in the building erected by
Redding, on ground leased by him from Rudd, but that a
part was used in the adjoining building rented from Holt,
but which constituted, nevertheless, a part of "the Pearl
Street House," known and kept by Redding as such, and
in fact, contained the dining room of the establishment.
A few days after the answer of Redding was filed, which
first disclosed the facts therein stated, as to the use of the
paper in different portions of the Pearl Street House, and
his different titles thereto, Laviolette filed an amended
bill, in which he states that since filing his original bill,
he is informed that a portion of the house therein men-
tioned, called and known as the Pearl Street House,
stands on ground belonging to Deodate Holt, and that
Redding holds the same by some contract with Holt;
he insists that he is entitled to his statutory lien on the
Pearl Street House, whether his paper furnished to Red-
ding was used in the dining room or chamber, and making
Holt a defendant, and calling on him to set out his inter-
est in said house, he prays as in his original bill.

We think it is fairly to be assumed, from the face of the
record, that the misdescription in the original bill, of the
Pearl Street House, and of Redding's interest therein,
and the omission to make Holt a party, resulted from

mistake or ignorance, and should not be attributed to any fraudulent intention to throw an undue burthen upon one part of the house to the injury of other persons having an interest by way of lien or otherwise in that part. So far as appears, there was in fact no other lien upon that part of the house which stood on ground leased from Holt; and it would have been advantageous to the complainant to have thrown his claim wholly or partially on that part. The misdescription, therefore, if it seem to restrict the lien, cannot be supposed either to have been fraudulent, since in this respect it was disadvantageous to complainant, nor for the same reason can it be supposed to have been made with the intention of excluding any of the house from the lien. Under these circumstances, although it be conceded that upon the facts appearing in the answers and proof, the claim of lien should not have been enforced on that part of the Pearl Street House which stood on Holt's ground, nor perhaps for so much of the claim as related to that part, until he had been made a party as having an interest, as lessor, in that part of the premises, yet as there was no fraud, and as the answers and the proof furnished the means of satisfactorily distributing the burthen and determining what part of the claim ought to be enforced upon the house standing on Rudd's ground, we are clearly of opinion that, upon the strictest construction of the bill, and even though Holt had not been made a party, and the amended bill had not been filed, the lien should have been enforced on Rudd's part of the house for so much of the complainant's claim as constituted the price of paper used on that part. And the only difficulty in the way of enforcing the residue of the claim upon the other part of the house, would arise from the fact that the amended bill was not filed until after a year had elapsed from the time of furnishing the paper, for the price of which the note was taken. But even this difficulty does not apply to that portion of the claim which is not included in the note, but rests in open account for paper furnished after the date of the note, and within one year before the amended bill was filed, and which was used on both parts of the Pearl Street House. To the extent, therefore, of this ac-

count, and of so much of the sum named in the note as covers the value of the paper used before its date, on that part of the Pearl Street House which stood on Rudd's ground, the complainant was clearly entitled to a decree enforcing his lien on the respective portions of said Pearl Street House, even if he were entitled to no further relief.

But upon a fair construction of the original bill, we think, as already intimated, that it should be understood as asserting a lien for the entire claim upon the whole Pearl Street House, and that the imperfect or incomplete description of the ground on which that house stood, should not be understood as restricting that assertion, but only as an additional but erroneous description of the sub. ject of the lien, made for the purpose of showing more precisely Redding's interest therein, and of laying the foundation for making Rudd a party. The house was already sufficiently described as "the brick house standing on the west side of third street, now kept as a tavern by Redding, and known as the Pearl Street House." Suppose the complainant, under an honest mistake of the fact, and in order to show Redding's interest, had added the words, "which stood on ground owned by said Redding in fee simple," and it should appear by the answer that a part of it stood on ground on which Redding had but a lease-hold—in such case, although the Chancellor might · refuse to enforce the lien upon the lease-hold interests unless, or until the lessor was made a party, and although upon the fact subsequently appearing, it might be necessary to discriminate between those parts of the claim which related to different parts of the house, yet we think the assertion of the entire lien should take date from the filing of the original bill, and not from the date when the grounds of discrimination were disclosed, or when the new defendant may have been made. Were it otherwise, the complainant might, in many cases, be made to suffer too severe a penalty for an honest ignorance of facts, the existence of which he may have had no reason to suspect, or no means of ascertaining by ordinary diligence. And so we think in this case, the entire lien which the law gave to Laviolette upon Redding's interest in the Pearl Street House, was asserted in the origi-

A bill to enforce a lien of a mechanic against the lessee and another sustained, though it appear that a third person was owner of the fee simple of part of the ground on which the house stood, such person being in due time bro't before the Court by amended bill.

nal bill, and though subject, by reason of subsequent disclosures in regard to the interest of Redding and of others, to be modified, restricted, severed in its application, or to some extent defeated; and although, also, new parties might be necessarily made before its final enforcement, yet its assertion bears date from the filing of the original bill, and it should be finally enforced upon the subject on which it is therein prayed to be enforced, in the same manner as if all the facts subsequently discovered and not fraudulently omitted, had been therein stated, and as if all the parties subsequently discovered to have an interest in the subject, had been therein made defendants. The lien is asserted upon Redding's interest in the Pearl Street House, and other persons are necessary parties, not because there is any lien upon their interest, but because they may also have liens or other interests which may be affected by the enforcement of the lien on Redding's interest, and which they should have an opportunity of asserting and protecting. To insure this opportunity, the statute relies not merely upon the knowledge of the complainant, and his duty under the general rules of chancery practice, but also upon the general notice which it requires the complainant to publish, and which was published in this instance immediately after filing the bill, stating the fact of his having filed his bill and the nature of the claim therein set up.

In view of these considerations, we are of opinion that Laviolette has not lost any part of the lien which the statute gave him on the Pearl Street House, or its different parts, either by taking the note for the entire amount due at its date, or by the manner in which he has asserted his lien in the original bill, or by the failure to make the discrimination which afterwards appeared to be proper, or by a supposed failure to assert any part of the claim or lien therein, or by failing to make Holt a defendant until after his interest was disclosed, and that he was entitled to have his entire claim and the lien or liens which the statute gave him originally for their enforcement recognized as valid, and enforced in the usual way upon those portions of the Pearl Street House to which it applied, pay-

ing due regard to the liens or other interests of other parties.

Wherefore, the decree dismissing his claim of lien is reversed, and the cause is remanded with directions to render a decree recognizing his claim and lien, and for further proceedings in conformity with this opinion.

*Loughborough* for plaintiff: *Guthrie* for defendants.